IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| IMRAN HAMID,<br><br>Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY (SUBSTITUTED PURSUANT TO FRCP 25(D)),<br><br>Defendant. | CIV. NO. 20-00513 JAO-KJM<br><br>**ORDER AFFIRMING IN PART AND REVERSING IN PART DECISION OF COMMISIONER OF SOCIAL SECURITY** |

**ORDER AFFIRMING IN PART AND REVERSING IN PART DECISION OF COMMISIONER OF SOCIAL SECURITY**

Plaintiff Imran Hamid ("Plaintiff") appeals Defendant Kilolo Kijakazi, Acting Commissioner of Social Security's (the "Commissioner") denial of his application for social security disability benefits.  He asks the Court to reverse the Commissioner's finding that he is not disabled and remand the matter for a new administrative hearing.  Specifically, Plaintiff asserts that the Administrative Law Judge ("ALJ") who evaluated his application (1) failed to consider Plaintiff's lower

1

back pain in calculating Plaintiff's Residual Functional Capacity ("RFC"); and (2) improperly rejected Plaintiff's testimony regarding his lower back pain.

For the following reasons, the Court AFFIRMS in part and REVERSES in part the Commissioner's decision and REMANDS this case for further administrative proceedings consistent with this Order.

## I. ADMINISTRATIVE PROCEEDINGS

In October 2019, Plaintiff applied for social security disability benefits. ECF No. 13-6 at 11–12. The Social Security Administration ("SSA") denied his application in November 2019. ECF No. 13-5 at 10–13. Plaintiff sought reconsideration and the SSA again denied his claim for benefits. *Id.* at 15–17.

Plaintiff initially requested a hearing from the ALJ, *id.* at 18–19, but later waived his right and agreed to have the ALJ decide the case without a hearing, *id.* at 20.

Plaintiff testified in writing that his lower back had been a problem since 2012. ECF No. 13-7 at 22. He asserted that he was taking medication for his back and had received injections. *Id.* On the medication, he claimed his pain was always around a five or six out of ten, but that without medication the pain increases to a nine or ten. *Id.*

On June 1, 2020, the ALJ issued his decision, ECF No. 13-3 at 20–35 (the "Decision"), finding and concluding as follows:

Step One

- Plaintiff did not engage in substantial gainful activity between September 14, 2018 and December 31, 2018.[1]  *Id.* at 23.

Step Two

- Plaintiff has the following severe "medically determinable impairments" that significantly limit his ability to perform basic work activities:  multilevel degenerative changes of the cervical spine, with radiculopathy; obesity; hypertension; diabetes, type II; and left lateral epicondylitis (tennis elbow).  *Id.*

- Among other impairments and symptoms, Plaintiff also has the non-severe impairment of "lumbar spine" pain and discomfort.  *Id.*

- Plaintiff's MRI of the lumbar spine on June 25, 2015 was normal and his lumbosacral spine x-ray on July 17, 2018 showed only mild multi-level degenerative changes.  *Id.*

- Plaintiff's treatment for back pain was conservative (prescription of pain medication) and successful.  *Id.*

---

[1]  September 14, 2018 is the relevant start date because Plaintiff had previously applied for Social Security Disability benefits in February 2018.  ECF No. 13-6 at 2–10.  The SSA denied that application, ECF No. 13-5 at 2–5, and denied reconsideration on September 13, 2018, *id.* at 7–9.  Plaintiff did not appeal the reconsideration denial, making that determination final and meaning that Plaintiff was not disabled at any point through September 13, 2018.  *See* ECF No. 13-3 at 20–21 (ALJ discussing effect of previous application and decision not to appeal denial of reconsideration; *see also* ECF No. 19 at 7 n.2 (citing 20 C.F.R. § 404.921 (2020)).  Title 20, section 404.921(a) of the Code of Federal Regulations provides that "the reconsidered determination is binding unless — [y]ou or any other party to the reconsideration requests a hearing before an administrative law judge within the stated time period and a decision is made."  20 C.F.R. § 404.921(a) (2020).  Thus, December 31, 2018 is the relevant end date because it is Plaintiff's last insured date.  *See* ECF No. 13-7 at 2; ECF No. 13-3 at 23.  Plaintiff does not contest the relevant time period.

3

- Plaintiff's activities were not "significantly limited as a result of these impairments or symptoms. Nonetheless, the undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." *Id.* at 23–24.

Step Three

- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). *Id.* at 26.

RFC Analysis

- Plaintiff has the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c) subject to the following restrictions: lift, carry, push or pull 50 pounds occasionally and 20 pounds frequently; stand/walk for 6 hours out of 8 and sit for 6 hours out of 8; occasional crawling; frequent climbing stairs and ramps; frequent balancing, stooping, kneeling, crouching; and occasional ladders, ropes, or scaffolds. *Id.*

Step Four

- Plaintiff is capable of performing his past relevant work as a food manager because the job did not require the performance of work-related activities precluded by Plaintiff's RFC. *Id.* at 29.

Conclusion

- Plaintiff has not been under a disability "during the relevant period at issue, beginning September 14, 2018 and through December 31, 2018, the date last insured." *Id.* at 31.

The ALJ's Decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review of the Decision. *Id.* at 2.

4

## II. LEGAL STANDARDS

### A. Standard of Review

The decision of the Commissioner must be affirmed "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) (citation omitted). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). To determine whether there is substantial evidence to support the ALJ's decision, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted). If the record, considered as a whole, can reasonably support either affirming or reversing the ALJ's decision, the decision must be affirmed. *See Hiler v. Astrue*, 687 F.3d 1209, 1211 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." (citation omitted)); *Burch*, 400 F.3d at 679. The ALJ, as the finder of fact, is responsible for

weighing the evidence, resolving conflicts and ambiguities, and determining credibility.  *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Even where legal error occurs, the decision must be upheld "where that effort is harmless, meaning that it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citation omitted).

**B.    Eligibility for Disability Benefits**

To be eligible for disability insurance benefits, a claimant must demonstrate that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In addition, it may only be determined that a claimant is under a disability "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  Only disabilities existing before the date last insured establish entitlement to disability

insurance benefits. *See Sam v. Astrue*, 550 F.3d 808, 810 (9th Cir. 2008) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (per curiam)).

A five-step analysis is employed in evaluating disability claims:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the residual functional capacity ("RFC") to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch*, 400 F.3d at 679; 20 C.F.R. § 404.1520. It is the claimant's burden to prove a disability in steps one through four of the analysis. *See Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citation omitted).

### III. DISCUSSION

Plaintiff challenges the ALJ's treatment of Plaintiff's lumbar spine degeneration and resulting pain. In his Opening Brief, Plaintiff contends that the

ALJ (1) failed to consider the non-severe impairment in calculating Plaintiff's RFC; and (2) rejected Plaintiff's testimony regarding the pain without specific, clear, and convincing reasons.[2]  *See generally* ECF No. 18 at 13–28.

**A.     The ALJ's RFC Analysis**

An ALJ must consider all impairments, severe and non-severe, when determining a claimant's RFC.  *See* 20 C.F.R. § 404.1545(a)(2); *see also Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).  But even a severe impairment does not necessarily "correspond to limitations on a claimant's ability to perform basic work activities."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228–29 (9th Cir. 2009) (rejecting the claimant's argument that "a severe impairment, by definition, inhibits a claimant from engaging in 'basic work activities,' and the ALJ's statement of her RFC does not capture that limitation").  Because a non-severe impairment is, by definition, less limiting than a severe impairment, *see* 20 C.F.R. § 404.1522(a), it follows that a non-severe impairment need not present any limitations on a claimant's ability to perform basic work activities.  Ultimately, it is the claimant's burden to prove a disabling impairment, and she "must show that he is precluded from engaging in not only his 'previous work,' but also from

---

[2]  The Commissioner remarks that the two issues that Plaintiff presents essentially allege the same error, ECF No. 19 at 20 n.5, and Plaintiff agrees that the Court could view his arguments as one issue, ECF No. 20 at 6.  Nonetheless, the parties originally addressed the issues separately and the Court will do the same.

performing 'any other kind of substantial gainful work' due to such impairment." *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (citation omitted).

Here, the ALJ concluded that Plaintiff's lower back pain constituted a non-severe impairment. ECF No. 13-3 at 23. Plaintiff does not challenge that designation. Instead, he argues that the ALJ failed to consider the impairment in the RFC calculation and/or neglected to explain why the ALJ did not address the back pain in the RFC calculation. ECF No. 18 at 16–17, 19. The Commissioner responds that Plaintiff offers no evidence to indicate how his non-severe low back pain would limit him, ECF No. 19 at 18–19, and that the ALJ sufficiently addressed Plaintiff's back pain, albeit at Step Two rather than under the RFC analysis section of the Decision, *see id.* at 22 n.7.

At Step Two, the ALJ noted Plaintiff's complaints of lower back pain, but commented that a 2015 MRI of the lumbar spine was normal, and that a July 2018 "lumbosacral spine x-ray . . . showed only mild multi-level degenerative changes." ECF No. 13-3 at 23. Further the ALJ described Plaintiff's treatment of his back pain as conservative in that it involved prescribed pain medication. *Id.* And that "medical evidence reveals treatment was successful in managing [this and the other non-severe] conditions." *Id.* The ALJ concluded that Plaintiff's non-severe

9

impairments — including his lower back pain — did not significantly limit Plaintiff's activities. *Id.* at 23–24.

But the ALJ did not specifically mention Plaintiff's lower back or lumbar pain in the RFC calculation. *See id.* at 27–29. The ALJ commented that Plaintiff complained of "worsened pain and discomfort primarily involving his spine and upper extremities," that limited his ability to walk, stand, and lift weight. *Id.* at 27. The ALJ then assessed the medical evidence related to the back pain but that evidence relates to Plaintiff's cervical spine, which the ALJ had determined was a severe impairment. *See id.* at 27–28. Nonetheless, the ALJ cited medical opinions that described Plaintiff's lower back pain but concluded that Plaintiff's gait was normal and that Plaintiff demonstrated a "medium" maximum sustained work capability. *Id.* at 29; *see also* ECF No. 13-4 at 22–24, 47–48.

Plaintiff claims that the ALJ's failure to specifically address Plaintiff's lower back pain in the RFC calculation constitutes prejudicial error because there is no reviewable reason from which this Court can determine whether the ALJ's decision is supported by substantial evidence. *See* ECF No. 18 at 18–19. But Plaintiff has not directed the Court to any authority that requires an ALJ to address the limitations caused by each impairment individually, along with their respective impacts on the RFC. *See Cooper v. Saul*, CIVIL NO. 19-00538 JAO-RT, 2020 WL 2735384, at *4 (D. Haw. May 26, 2020). Even if there were such a

10

requirement, any error would be harmless if the Court can discern the ALJ's path to its conclusion.  *See Brown-Hunter*, 806 F.3d at 492.

Here, the ALJ acknowledged Plaintiff's complaints of lower back pain but determined that the medical imaging was relatively benign.  ECF No. 13-3 at 23; ECF No. 14-2 at 142–43.  The ALJ noted that Plaintiff was on medication for the pain and that the medication seemed to be working.  ECF No. 13-3 at 23–24.  Finally, in the RFC section, the ALJ cites the State Agency assessments from Drs. N. Shibuya, MD. and W. Matsuno, MD. to be persuasive.  *Id.* at 29.  Both of those assessments considered Plaintiff's back pain.  *See* ECF No. 13-4 at 18, 39.  For example, on September 12, 2018, Dr. Shibuya commented that Plaintiff had "[c]hronic neck and back pain without radiculopathy or surgery."  *Id.* at 18.  Dr. Shibuya also noted that Plaintiff received facet injections, used a TENS unit, and took narcotic pain medication for the problem.  *Id.*  Dr. Shibuya continued that Plaintiff had normal neuromuscular function and gait, and that imaging revealed only mild degenerative change in Plaintiff's lumbar spine.  *Id.*  Likewise, Dr. Matsuno noted that Plaintiff had "mild lumbar degenerative disease," that improved with injections, and did not affect his gait.  *Id.* at 47.  Both doctors agreed with a "medium" RFC calculation.  *Id.* at 18, 47.

Further, Plaintiff has not directed the Court to any evidence other than his own testimony that his back pain rendered the RFC calculation erroneous.  *See*

11

ECF No. 18 at 16–17.  The Court will address Plaintiff's testimony and the ALJ's treatment of that testimony below.  But, to the extent Plaintiff argues that the ALJ ignored Plaintiff's lumbar back pain in the RFC calculation, the ALJ did not err and substantial evidence supports the ALJ's findings.

**B.     The ALJ's Credibility Finding**

Plaintiff also asserts that the ALJ improperly rejected Plaintiff's testimony about his back pain limitations without providing the requisite specificity.  ECF No. 18 at 21–26.  Under the "specific, clear, and convincing" standard for discounting a claimant's credibility, the Court concludes that the ALJ's Decision lacked sufficient detail about why it rejected Plaintiff's testimony.

"Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (citation omitted); *see Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) ("[Q]uestions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary." (citation omitted)); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).  When the ALJ makes specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, it is not the Court's role to second-guess the ALJ's decision.  *See Fair*, 885 F.2d at 604.  The Ninth Circuit has established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Trevizo*, 862 F.3d at 1000 (quoting *Garrison*, 759 F.3d at 1014–15) (footnote omitted); *see Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (identifying two-step analysis in assessing the credibility of a claimant's testimony regarding the subjective pain or intensity of symptoms); *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). That said, the ALJ need not "'believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" *Molina*, 674 F.3d at 1112 (quoting *Fair*, 885 F.2d at 603).

Credibility determinations must be made with sufficiently specific findings to allow the court to conclude that the ALJ did not arbitrarily discredit a claimant's

13

testimony. *See Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc)).

Here, at the first stage of the credibility analysis, the ALJ found that Plaintiff's medically determinable impairments could cause Plaintiff's alleged symptoms. ECF No. 13-3 at 27. The ALJ noted that Plaintiff's claim of inability to work was "mainly due to worsened pain and discomfort primarily involving his spine and upper extremities." *Id.* The ALJ also repeated Plaintiff's allegations that he could not walk for longer than fifteen minutes without having to rest and that he used to be able to lift 60–70 pounds, but now could manage only ten. *Id.*

At the second stage, however, the ALJ concluded that Plaintiff's statements "about the intensity, persistence, and limiting effects of his symptoms" were inconsistent with "the medical findings, objective imaging and other evidence," which "demonstrate[d] [that Plaintiff] was more capable with regard to the relevant period at issue beginning September 14, 2018 and through the date last insured of December 31, 2018." *Id.* The ALJ then cited that past imaging demonstrated "multilevel degenerative changes of the *cervical spine* maximum at the C4-C5 and C5-C6 levels and partial effacement of the spinal cord at these levels with myelopathy," and that treatment included cervical "epidural injection therapies." *Id.* (emphasis added); *see* ECF No. 14-1 at 151–52. The ALJ also cited that by October 2018, the Plaintiff "reported [that] his pain was better, taking 3 or 4

14

Hydrocodone-Acetaminophen per day." ECF No. 13-3 at 27–28 (citing ECF No. 14-1 at 85). But it is unclear that the medical record that the ALJ cited directly addressed lower back pain at all. *See* ECF No. 14-1 at 84–85. The line that the ALJ relied on is isolated from any discussion of back pain and instead follows the attending physician's note about a cough. *Id.* Further, the purpose of Plaintiff's visit that day was unrelated to his back pain. *Id.* at 84. The only other medical evidence that the ALJ relied upon that could possibly relate to Plaintiff's back was that a November 2018 examination "reveal[ed] obesity . . . [but] there [was] an absence of findings showing abnormalities in gait." ECF No. 13-3 at 28.

In rejecting Plaintiff's testimony about his limitations, the ALJ also reasoned that Plaintiff "did not require spinal surgery or other invasive orthopedic procedures during the relevant period at issue through the date last insured of December 31, 2018," and that Plaintiff "was physically capable of usual activities of daily living that included shopping, cleaning, laundry." *Id.* But none of the medical evidence that the ALJ relied upon related specifically to Plaintiff's lower back.

Plaintiff testified that his lower back pain had been a problem since 2012, but that it had worsened by the time he sought disability benefits. ECF No. 13-7 at

15

22.[3]  He explained that he had received four injections in his lower back in June 2018 and that his pain was always a five to six out of ten but would increase to a nine or ten without medication.  *Id.*  Upon waking, Plaintiff would take his first pill and remain in bed for thirty minutes until the medication kicked in.  *Id.* at 23.  In the afternoon, Plaintiff would nap from 2:00 to 6:00 p.m. and then take another pill.  *Id.*  At night, he would wake up four or five times in pain.  *Id.*

    Plaintiff also testified that he would walk three or four times per week, but that he could only walk for fifteen minutes before having to stop for a ten-minute break.  *Id.* at 26–27.  And while Plaintiff used to be able to lift 60–70 pounds, he could no longer even lift ten pounds.  *Id.* at 27.  Plaintiff argues that the ALJ failed to explain why he disagreed with any of these claimed limitations.

    The Commissioner responds that the ALJ sufficiently addressed Plaintiff's complaints about lower back pain and his alleged limitations in Step Two where the ALJ concluded that Plaintiff's lower back pain constituted a non-severe impairment.  ECF No. 19 at 21 (citing ECF No. 13-3 at 23).  In that section, the ALJ commented that imaging of the lower back showed only mild degeneration, and that Plaintiff's treatment was conservative.  ECF No. 13-3 at 23.

---

[3]  Although Plaintiff's testimony about his lower back pain pre-dates the start date of the relevant disability period, *see supra* at 3 n.1, the ALJ treated the testimony as pertinent, *see* ECF No. 13-3 at 23.  Thus, the Court will consider it as well.

While it may be possible to infer why the ALJ rejected Plaintiff's testimony about his limitations, "providing a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Brown-Hunter*, 806 F.3d at 494.  The only connections the ALJ drew between the medical records and Plaintiff's testimony about limitations focused on Plaintiff's cervical spine (or elbow), rather than his lower or lumbar spine.  *See* ECF No. 13-3 at 27–28; *see also Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014) (holding that ALJ did not make sufficient findings to reject a claimant's testimony about her headaches because the ALJ failed to connect the medical record to the testimony).

Further, the ALJ's comments at Step Two that the imaging did not demonstrate a severe impairment and that Plaintiff's treatment was conservative, fail to describe what specific testimony the ALJ found to lack credibility.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("ALJs typically identify what parts of the claimant's testimony were not credible and why." (citation omitted)).  A passing reference to medical imaging and conservative treatment is not the type of specific, clear, and convincing reason that ALJs are required to articulate in rejecting a claimant's testimony.  *Cf. Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) ("[T]he ALJ may not reject subjective symptom testimony. . . simply because there is no showing that the impairment can

17

reasonably produce the *degree* of symptom alleged." (footnote omitted)). Although the ALJ need not provide a "line-by-line exegesis," *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (citation omitted), he was required to provide a specific basis for why he rejected Plaintiff's chief complaint about lower back pain affecting his ability to work. *See* ECF No. 13-7 at 22.

The Court acknowledges that one complicating factor in this case is that Plaintiff waived his right to a hearing and the "testimony" he provided is sparse, consisting only of his Disability and Function Reports. *See* ECF No. 13-7 at 5–13, 22–29, 60–68. But this paucity of testimony does not alleviate the ALJ's burden of outlining specific, clear and convincing reasons to reject a claimant's testimony. And where, as here, there is only a handful of statements offered, all a decision needs is a few specific reasons to reject that limited testimony. Instead, the ALJ explained why he disbelieved Plaintiff's testimony as to his cervical spine pain but did not provide the same detail regarding Plaintiff's lower back pain, which was the center of Plaintiff's testimony. *Compare* ECF No. 13-3 at 27–28, *with id.* at 23. Without more detail, the Court cannot determine whether the ALJ arbitrarily discounted Plaintiff's testimony. *See Thomas*, 278 F.3d at 958.

The Commissioner cites to *Burch* and *Osenbrock v. Apfel*, 240 F.3d 1157, 1165–66 (9th Cir. 2001), to support her argument that the ALJ's references to Plaintiff's mild medical imaging and normal gait were sufficient to reject

Plaintiff's testimony. ECF No. 19 at 23. But neither case aids the Commissioner's cause. In *Burch*, the Ninth Circuit upheld an ALJ's partial rejection of a claimant's testimony of back pain based in part on benign medical imaging. *See Burch*, 400 F.3d at 681. But the court noted that a "lack of medical evidence cannot form the sole basis for discounting pain testimony." *Id.* The ALJ in *Burch* not only relied on the medical imaging, but also explained that the claimant did not seek consistent treatment. *See id.* In the instant case, the ALJ mentioned Plaintiff's medical imaging at Step Two but omitted any discussion of the topic from the portion of the Decision that actually rejects Plaintiff's testimony. Further, unlike the ALJ in *Burch*, the ALJ here does not explain any inconsistency between Plaintiff's treatment for lower back pain and his symptom testimony.

Similarly, in *Osenbrock*, the Ninth Circuit affirmed an ALJ's rejection of testimony when the ALJ relied not just on a normal physical exam, but also articulated *seven* separate reasons to reject the claimant's testimony. *See Osenbrock*, 240 F.3d at 1165–66. Unlike the ALJ's decision there, the ALJ here merely noted that Plaintiff was obese but that his gait was normal, and left only clues about the ALJ's reasons for finding Plaintiff's symptom testimony not credible. ECF No. 13-3 at 28. The Court is not required to piece the puzzle together.

The Commissioner cites additional places in the record where an ALJ *may* have found evidence to disbelieve Plaintiff's testimony, *see* ECF No. 19 at 23–24, but the ALJ did not articulate those reasons. Thus, the Court will not consider that evidence for the purposes of assessing the ALJ's credibility finding. *See Brown-Hunter*, 806 F.3d at 494; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (holding that it was error for district court to affirm credibility determination based on evidence the ALJ did not discuss).

## IV.  CONCLUSION

For the foregoing reasons, the Commissioner's decision denying Plaintiff's application for social security disability benefits is AFFIRMED IN PART AND REVERSED IN PART. This case is REMANDED for further administrative proceedings consistent with this Order.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, November 22, 2021.



Jill A. Otake
United States District Judge

---

CIV. NO. 20-00513 JAO-KJM, *Hamid v. Kijakazi*; ORDER AFFIRMING IN PART AND REVERSING IN PART DECISION OF COMMISIONER OF SOCIAL SECURITY